GRIMES *v.* JONES.

4-4572

Opinion delivered March 29, 1937.

*Earl Blansett* and *W. N. Ivie,* for appellant.

*D. B. Horsley, Hugh C. Jones* and *John W. Nance,* for appellees.

GRIFFIN SMITH, C. J. Rufus C. Jones, many years after his marriage to Ida A. Jones, purchased twenty acres of land which he and his wife were occupying at the time of his death in 1922.

In 1908 they executed a joint or reciprocal will, under the terms of which the survivor was to take all property, both real and personal. The husband predeceased the wife, and she became executrix of the estate. Money had been borrowed by Rufus C. Jones from the First National Bank of Rogers, and this obligation remained unpaid when he died. The claim was not filed with the executrix, or with the probate court, nor was it in any manner urged against the estate within the period of limitation.

On September 23, 1926, after the debt had become barred, Mrs. Jones executed her note, payable to E. F. Jackson, president of the bank, in substitution of her husband's debt of $1,000. She also gave a mortgage on the home place. The bank became insolvent, and Jackson died. On November 5, 1931, Mrs. Jones borrowed $1,000 from J. W. Grimes, appellant herein. This loan was made for the express purpose of taking up the Jackson bank note. The home property, released from the prior mortgage, was again pledged. In January, 1933, interest was in default, and this was evidenced by another note, issued by Mrs. Jones to Grimes for $100. Principal and interest amounted to $1,297.08 as of April 10, 1934, and later suit was filed.

Alleging in a cross-complaint that the will was void, Mrs. Jones asked that the notes and mortgage be cancelled. In support of this contention she alleged that after the will was executed in 1908, Rufus C. Jones formally adopted Mildred Ruth Smith, who subsequently, through marriage, became Ruth Jones Grimes, one of the appellees herein.

Ruth Jones Grimes intervened in the litigation, claiming that she was adopted by Rufus C. Jones at the April (1911) term of the Benton probate court, which was after the wills had been made, and thereafter, in legal contemplation, she became a daughter.

When the cause came on for trial the appellant, J. W. Grimes, filed a motion and petition, protesting action of the court in permitting both the defendant and intervener to change their pleadings after the case was set for trial. Specifically, the objection was that the appellees, under the amended pleadings, would be allowed to introduce an order of the probate court amending, *nunc pro tunc,* the original order of adoption; that the amending order was made without notice to appellant; that the first order was void *ab initio;* but, if not void, it could not be attacked collaterally in the chancery court proceeding. The motion was overruled.

Appellant's complaint, seeking judgment and foreclosure, was filed February 18, 1935. The petition for an order, *nunc pro tunc,* bears date of December, 1935. It recites that at the time Rufus C. Jones petitioned for adoption of Mildred Ruth Smith, each was a resident of Benton county, Arkansas; that upon a hearing on the petition, with proof, its prayer was granted and there was an order of adoption; that at such hearing it was shown that both parties were residents of Benton county, but by clerical misprision the order failed to recite the place of residence..The adoption order of 1911 reads: "The court finds from the evidence that Mildred Ruth Smith is a female child of the age of five years; that her parents are dead, and that she has no property."

The order of adoption, after the correction, *nunc pro tunc,* reads: "From the evidence adduced the court doth find that R. C. Jones filed in this court his petition praying for an order for the adoption to him of the petitioner, Mildred Ruth Simpson, who was then a child of the age of five years; that the petitioner, Mildred Ruth Grimes and the said Mildred Ruth Smith are one and the same person; that at the time said petition was filed and acted upon by this court both the said R. C. Jones and the said Mildred Ruth Smith were resident citizens of Benton county, Arkansas, and that evidence of these facts was adduced upon the hearing of said petition in this court, and this court so found from said evidence that this court made and entered of record an order and judgment adopting the said Mildred Ruth Smith to the

said R. C. Jones, which said judgment appears of record in the office of the clerk of this court in record 'J' at page 329; that by clerical misprision the record entry of said order and judgment does not recite the finding of the court that the said R. C. Jones and the said Mildred Ruth Smith were resident citizens of Benton county, Arkansas, and, therefore, said order and judgment should be corrected so as to recite said findings. It is therefore by the court considered, ordered and adjudged that the petition of the petitioner herein be and the same is granted, and that the clerk of this court be and he is hereby directed to enter now for then the following corrected order and judgment: 'Now on this day is presented to the court the petition of R. C. Jones to adopt Mildred Ruth Smith, and from the evidence adduced the court finds that the petitioner, R. C. Jones, and the said Mildred Ruth Smith are each resident citizens of Benton county, Arkansas; that the said Mildred Ruth Smith is a female child of the age of five years; that her parents are dead, and she has no property.' ''

This order and judgment was introduced in evidence in the chancery court, and testimony as to the manner in which it was procured was heard. County and Probate Judge David Compton was a witness and said that he remembered something about the hearing on the *nunc pro tunc* matter; that the petition, notice, and the affidavit of Mrs. Ida A. Jones were presented at the same time, but that he did not remember who was present at the time the order was made.

Mrs. Ida Jones testified that on the day the original order of adoption was made she and Mildred Ruth Smith and Rufus C. Jones were in Bentonville; that Ruth was something over five years old when the adoption order was made.

Miss Bess Pace, county clerk, identified the order of adoption, and stated: ''I do not know where the original papers, that is, the petition and other papers, upon which this order was passed, are now. We had those papers one time, then some one borrowed them from the office. We had the papers at the time the *nunc pro tunc* order

was made in the case in December, and I never have seen them since.''

In *Morris* v. *Dooley*, 59 Ark. 483, 28 S. W. 30, 430, it was held that ''A proceeding in the probate court to adopt a child is a special statutory proceeding, not according to the course of the common law, nor in the exercise of the court's general jurisdiction; and a judgment rendered therein will be void upon collateral attack if neither the judgment entry nor the petition states that the child is a resident of the county.''

In *Ward* v. *Magness*, 75 Ark. 12, 86 S. W. 822, Chief Justice HILL, speaking for the court, said: ''The sole question for determination is the amendment of the record by the *nunc pro tunc* order of September 3, 1902. In *Morris* v. *Dooley*, 59 Ark. 483, 28 S. W. 20, 430, an order like the one in question was held void on collateral attack because the record failed to show affirmatively that the child was a resident of the county where the order was made. Recognizing the invalidity of the order on its face, the appellee, as soon as she learned its validity was disputed by the widow and next of kin, applied to the probate court to correct the order, alleging that by clerical error it did not speak the truth, and that in truth the jurisdictional fact of residence was shown and adjudicated, and asking that the record be amended to show such to have been the truth of the case. Issue was joined and tried in the probate court and again in the circuit court, each court finding that in fact it was shown and adjudicated that Ida Bell Adams was a resident of Independence county at the time of the original entry. In *Bobo* v. *State*, 40 Ark. 224, the decisions in this state and elsewhere on amending records *nunc pro tunc* were reviewed by Chief Justice ENGLISH, and he announced the rule on the subject as follows: 'Courts have a continuing power over their records not affected by the lapse of time. Should the record in any case be lost or destroyed, the court whose record it was possesses the undoubted power, at any time afterwards, to make a new record. In doing this it must seek information by the aid of such evidence as may be within its reach tending to show the nature and existence of that which it is asked

to establish. There is no reason why the same rule should not apply when, instead of being lost, the record was never made up, or was so made up as to express a different judgment than the one pronounced by the court. Hence the general rule that a record may be amended, not only by the judge's notes, but also by other satisfactory evidence.' This case has often been followed and applied by this court.''

The opinion then shows the evidence upon which the *nunc pro tunc* order of the Independence probate court was based, including testimony of the probate judge, who was also judge when the first order was made, and adds: ''Upon this and other evidence the circuit judge has found as a fact that the jurisdictional part of the order was actually made and omitted by the clerk in writing it up. This finding is conclusive in this court where there is any legally sufficient evidence to sustain it.''

In the case before us the *nunc pro tunc* order contains a recital of the probate court that the finding of fact was based upon the petition, and ''evidence adduced.'' The chancery court recognized the order as valid after hearing proof which, standing alone, would be insufficient, but, considered with the recital of the order, must be accepted on appeal as lending verity to the presumption of regularity. The order or judgment, being valid on its face, was not subject to collateral attack in the chancery court, and, when properly identified, it spoke for itself.

Mr. Justice SMITH is of the opinion that the court abused its discretion in not allowing time on the motion of appellants, but in other respects concurs herein.

Section 10506, Crawford & Moses' Digest, provides that ''Whenever a testator shall have a child born after the making of his will, either in his lifetime or after death, and shall die, leaving such child, so after born, unprovided for in any settlement, and neither provided for nor in any way mentioned in his will, every such child shall succeed to the same portion of his father's estate, real and personal, as would have descended or been distributed to such child if the father had died intestate, and

shall be entitled to recover the same portion from the devisees and legatees in proportion to and out of the parts devised or bequeathed to them by such will." Section 10507 provides: "When any person shall make his last will and testament, and omit to mention the name of a child, if living, or the legal representatives of such child born and living at the time of the execution of such will, every such person, so far as regards such child, shall be deemed to have died intestate, and such child shall be entitled to such proportion, share and dividend of the estate, real and personal, of the testator, as if he had died intestate."

Our adoption laws, § 254, Crawford & Moses' Digest, provide that when the probate court, acting upon a petition, is satisfied that adoption will be for the best interests of the child, [it] "shall make an order that such child be adopted, and from and after the adoption of such child it shall take the name in which it is adopted, and be entitled to and receive all the rights and interest in the estate of such adopted father or mother by descent or otherwise, that such child would do if the natural heir of such adopted father or mother."

This court has not heretofore construed these sections of the digest in relation to facts such as those presented by this appeal, but in *Shaver* v. *Nash*, 181 Ark. 1112, there is dictum in support of the conclusion arrived at in this opinion and the question at issue has been settled in other jurisdictions. Vol. 2, page 453, Corpus Juris Secundum, states the following rule: "Where the adopted child is entitled to inherit as a natural child, a child adopted after the execution of a will is entitled to succeed to the same portion of the parent's property as would have descended to such child if the parent had died intestate, if it appears that the child was unprovided for by any settlement, and neither provided for nor in any way mentioned in the will, provided that a natural child would be entitled to such inheritance." See, also, § 20, 1 R. C. L., page 620; 1 American Jurisprudence, 658, 659, 661, to the same effect.

Having held that adoption of appellee Marjorie Ruth Grimes could not be questioned collaterally, it follows

that the time of such adoption will relate back to the original order of 1911, which was three years after the will was made, and the adopted daughter stands in the position of a natural child born subsequent to execution of the will, and inherits accordingly.

Judgment was given in favor of appellant for the amounts due on the two notes, with interest, and a lien was declared upon the homestead and unassigned dower rights of the defendant, Ida A. Jones, with directions to sell, and the rights of the appellee, Ruth Jones Grimes, were quieted with respect to her inheritance as the heir of Rufus C. Jones.

No error appearing, the decree is affirmed.