WRIGHT *v.* FORD.

4-8965                                    224 S. W. 2d 50

Opinion delivered November 14, 1949.

*Virgil Evans, McMath, Leatherman, Schoenfeld & Whittington* and *James W. Chesnutt,* for appellant.

*R. J. Glover* and *C. T. Cotham,* for appellee.

GRIFFIN SMITH, Chief Justice. Appellants challenge the Court's right, after term, to set aside an order of confirmation. The Judge expressly found that fraud was not practiced upon the Court in procurement of the judgment.

The property bid in by appellee is part of an estate under Probate administration. R. D. Wright died intes-

tate in April, 1947. His widow remarried, and as Mrs. Georgia L. Hoover petitioned for allotment of dower. In the proceedings for assignment it became necessary to sell property known locally as Wright's Tourist Court, fronting on Albert Pike Highway. Appellee Ford owned valuable realty near the tourist court, and during R. D. Wright's lifetime had endeavored to purchase the lot involved in this litigation.

The commissioners were directed to lay off property for the widow's dower, but in doing so to exclude her homestead. In Mrs. Hoover's petition, and in the Court's order, the Wright lands were described as being on Thornton Street, running west 200 feet along the highway. The homestead would extend 100 feet from Thornton Street.

When the commissioners reported that they could not, without prejudice to the widow and heirs, recommend the assignment of dower in kind, they were ordered to sell all of the property except the homestead. Ford personally appeared at the sale and made the highest bid, raising his nearest competitor by $100 with an offer of $19,000.

November 22, 1948—twelve days after the sale was concluded—action of the commissioners was confirmed and execution of a deed was ordered. December 10th Ford filed with the Probate Clerk a petition to vacate the order of confirmation, alleging, in effect, that a discrepancy of five feet and failure of the commissioners to accurately describe the tourist court property, and to truly advertise it, rendered the transaction unconscionable and void. According to the petition, the commissioners had power to sell only 95 feet of the frontage on Albert Pike Highway, etc. The only public notice, Ford alleged, was a display advertisement signed by Wood and Chesnutt as attorneys, as distinguished from the Court's order that the commissioners cause legal notice to be printed for twenty days in a newspaper of general circulation. In an amendment to his pleading, Ford asked that the purchase price be proportionately abated if the Court should find that confirmation should not be vacated.

In a demurrer and response to the petition, Mrs. Hoover and others in interest asserted (1) that the petition did not allege facts sufficient in law to justify the relief, and (2) they denied that Ford was in any way misled. They affirmatively alleged that appellee not only knew where the true boundaries were, but that in making the sale the commissioners publicly announced that the printed advertisements were erroneous; therefore, in buying, Ford actually received the property he intended to acquire. The response and demurrer were verified, but Ford's petition was not. No action was taken by the Court during the term at which the confirmation order was made, nor does the record disclose an attempt to get consideration. When the December term began witnesses were heard, and a judgment vacating the action of confirmation was entered.

Ford testified that he considered the property to be highly desirable, and that he was willing to bid liberally for it, but this willingness was predicated upon his belief that the highway frontage was 100 feet. He mentioned a shortage in the rear measurement, but did not regard this as important as the "underage" of five percent mentioned in the petition. Approximately a week before the bidding, Ford went to Judge Scott Wood, who then represented Mrs. Hoover, and asked for a plat. Judge Wood sent him to another party, but explained that Mrs. Hoover would be glad to show where the lines were. Ford says he talked with Mrs. Hoover and relied upon the corners she indicated. A stone, painted white and set in the ground for ornamental purposes, figured in the discussions.

R. S. Smith, the commissioner who conducted the sale, testified that when the bidding began he had a copy of the advertisement. When he read the figures showing 100 feet along the highway, some one spoke up and said "ninety-five." Smith thought he made some facetious remark as to his own inability to read correctly. Continuing, he testified: "Public attention was called to the fact that the plat showed only 95 feet. The plat was handed out to any one who was interested." Smith was

of opinion that Ford was present when the discrepancy announcement was made. He made the first bid, and there had been an announcement of the five-foot variation before that time.

The order of confirmation contains a recital that the property was duly advertised as provided by law, and that all jurisdictional requirements were met. Judge Wood, as a witness for the appellants, verified the fact of legal publication, although it is conceded that the description called for 100 feet.

We think a preponderance of the testimony places Ford in a position where it is inconceivable that he did not hear the discussions regarding front-foot shortage; and on the purely factual issue we would be compelled to say that when his bids were made the situation was such that he must have known what was being done.

A Court's control of its judgments and decrees during the term is inherent, and exists without reference to any statute. *Wells Fargo & Co. Express* v. *W. B. Baker Lumber Co.,* 107 Ark. 415, 155 S. W. 122. But, except as authorized by statute, this control ends when the term expires, and one seeking relief must find his right in a subdivision of Pope's Digest, § 8246, 2 Ark. Stats. 29-506, [or if in equity by bill of review. See *Long* v. *Long,* 104 Ark. 562, 149 S. W. 662], *Bank of Russellville* v. *Walthall,* 192 Ark. 1111, 96 S. W. 2d 952. The fourth statutory ground authorizing avoidance is for fraud practiced on the Court in procuring the judgment or decree. It is this subdivision that appellee relies upon, in addition to his contention that the Court may act within discretionary limits at a subsequent term where the motion to vacate is filed at the judgment or decree term.

Appellee is entirely correct in saying that the Court's discretion to vacate an improper judgment or decree, if exercised before lapse of the term, will not be controlled on appeal. We think, however, that this discretion ends with the term unless there are extraordinary circumstances from which an inference can be fairly

drawn that the parties in interest knew it was intended that action on the motion be carried over. Unless this intent is clearly disclosed, an innocent person might be adversely affected. Certainly one dealing with real property and finding of record, *prima facie,* a final order, should not suffer at a later date because action was taken in a way not authorized by law, and at a time when the Court's discretion had ended.

A phrase tending to support appellant's contention that with filing of the motion during term the Court had a right to act at the following term, is found in *Young* v. *Young, Guardian,* 201 Ark. 984, 147 S. W. 2d 736. It was there said that "In the instant case the motion to vacate was made before the May term of Poinsett chancery court had been succeeded by the December term, and the order setting the [probate] judgment aside was not void for want of jurisdiction." This Court reversed the action of the trial court in vacating the judgment. Assuming that comment on jurisdiction in the Young case was not *dictum,* still the record shows that the motion to vacate, although filed during the trial term, was verified.

Our attention has not been called to any case where an unverified motion, filed during term and carried over, was treated as sufficient when dealt with at the subsequent term. The requirement for statutory compliance was stressed in *Merriott* v. *Kilgore,* 200 Ark. 394, 139 S. W. 2d 387, where it is indicated that an unverified motion to vacate could not be treated as a complaint.

Quoting from *McDonald* v. *Olla State Bank,* 192 Ark. 603, 93 S. W. 2d 325, appellant says that "this principal [of sustaining the trial court's discretion] was later upheld in *Jaynes* v. *State,* 212 Ark. 410, 206 S. W. 2d 7. One of the points urged in the McDonald case was that, construed from a judicial standpoint, the decree was rendered in November, during the October, 1934, term of court. Insistence on this date was predicated upon certain written memoranda dated November 29. This Court, however, concluded that "the cause of action was primarily adjudicated April 15, 1935," . . . [and] "It follows from this determination that appellee's motion

to vacate, filed on September 9, 1935, fell within the April, 1935, term of said court." In the Jaynes case it was held that Circuit Court did not abuse its discretion in refusing to vacate a judgment; but there the motion was filed and acted upon during the same term.

An opinion written by Chief Justice McCulloch— *Moore* v. *Price,* 101 Ark. 142, 141 S. W. 501—would from the facts recited lend substance to appellant's position, but this apparent support is dissipated by an examination of the original transcript which shows that the motion was not under the statute, but, as expressed by the petitioner, was to be treated as a bill of review.

Relief to which the plaintiff, at the time of trial, was legally entitled in his personal injury suit, was denied in *St. Louis & N. A. R. Co.* v. *Bratton,* 93 Ark. 234, 124 S. W. 752, on the railroad company's appeal from an order, *nunc pro tunc,* made at a subsequent term. In the circumstances of the case the plaintiff had originally been entitled to have the judgment made a lien upon the defendant's property. In this Court's opinion, upholding the railroad company's contention that the trial Court was without power to declare the lien in the manner attempted, Judge Frauenthal said:

"In order to give to the records of a court the utmost sanctity and an absolute verity, the common law declared that no judgment could be amended after the term at which it was rendered. But where the entry through some plain error fails to correspond with the judgment that was actually rendered, the principles of justice obviously require that it should be corrected; and therefore the rule of the common law has been modified in modern practice to that end. . . . [But] under the guise of amendment, there is no authority to revise a judgment, or to correct a judicial mistake, or to adjudicate a matter which might have been considered at the time of the trial, or to grant an additional relief which was not in the contemplation of the Court at the time the judgment was rendered."

In view of the Court's express finding that fraud was not practiced in procurement of the judgment, the

action vacating it could not be sustained even if the motion had been verified; but since the statutory formality of verification was not complied with so that, at the succeeding term, the motion could have been treated as a complaint and within the statute, and since there were no extraordinary circumstances showing that jurisdiction had been retained, our holding goes only to the proposition that the Court was without power to vacate the order of confirmation.

Reversed with directions to reinstate the order of confirmation.