OZMENT *v.* MANN.

5-2838                                                   363 S. W. 2d 129

Opinion delivered December 17, 1962.

Paul K. Roberts, for appellant.

W. P. Switzer, for appellee.

ED. F. McFADDIN, Associate Justice. This is a partition suit brought by the appellants; and resisted by the appellees on the ground that the appellants have no interest in the lands sought to be partitioned. The crucial point in the case is the effect of certain *nunc pro tunc* proceedings.

On June 2, 1961, appellants, Lawson Ozment and the heirs of his brother, Tom Ozment, filed this suit in the Ashley Chancery Court against Floyd Mann and the other appellees, seeking to have a sale of the lands of J. Y. Mann, deceased, and a division of the proceeds between the appellants and the appellees. The complaint admitted that each of the appellees was entitled to some interest in the land, but urged that the appellants were also entitled to some interest because—as the complaint alleged—J. Y. Mann had adopted Lawson Ozment and Tom Ozment as his sons in 1898. The appellees denied the validity of the adoption order, and the Chancellor's decision was based on the invalidity of the original order of adoption in 1898 and the ineffectiveness of the subsequent *nunc pro tunc* orders in the adoption proceedings.

1. *The 1898 Adoption Order.* The only claim of appellants to any interest in the lands of J. Y. Mann, deceased, is because of the adoption order of 1898; but the original order of 1898 is fatally defective because neither the petition[1] nor the order[2] recited that J. Y. Mann or the Ozment

---

[1] The petition reads:

"TO THE HONORABLE PROBATE COURT OF BRADLEY COUNTY.

"The undersigned would respectfully petition your Honor to make an order for the adopting of Lawson Ozment age 11 years old and Thomas Ozment age 8 years old and they (have) no parents living and that the said children have no property and the said Petitioner does solemnly swear he asks for the adoption of said children and that they have no home and that they may be cared for to their best interest and they have the name of the Petitioner, Your petitioner would ever pray and AWCL. J. Y. MANN.

"Sworn to and subscribed before me this 10 day of Oct., 1898.

"B. F. Langston, Clerk, by H. S. Turner, D. C.

"ON REVERSE: NO. 889 Petition of J. Y. Mann for the adoption of Lawson & Tom Ozment. Examined and approved October 10, 1898.

"Filed Oct/98 B. F. Langston, Clerk, by H. S. Turner, D. C.

boys were residents of Bradley County; and we have repeatedly held that an adoption order is void if it fails to recite such essential jurisdictional facts. *Den* v. *Brown,* 216 Ark. 761, 227 S. W. 2d 623. Mr. J. Y. Mann died intestate in 1928; and the interest of the appellees became vested at that time, subject only to the widow's rights; so nothing in Act No. 137 of 1935, Act No. 369 of 1947, or Act No. 408 of 1947 can make valid the void adoption order of 1898. See *Dean* v. *Brown, supra.*

II. *The Nunc Pro Tunc Orders.* There are two of these: the first was on September 1, 1961; and the second was on December 4, 1961. When the appellants ascertained that the 1898 order of adoption was void, they undertook to remedy the situation by filing in the Bradley Probate Court a petition for order *nunc pro tunc*[3] to include the essentials as to residence. The petition was filed on June 13, 1961 (the partition suit having been pending since June 2, 1961); and on September 1, 1961 the Bradley Probate Court, without notice to any of the appellees, made its order *nunc pro tunc,* which recited that evidence was heard in 1898 which showed that J. Y. Mann and the two Ozment boys were then residents of Bradley County.

[2] The adoption order of the Bradley Probate Court of October 10, 1898, reads:

"J. Y. Mann Petition to have Tom & Lawson Ozment adopted as his Sons. GRANTED.

"Comes J. Y. Mann and files his petition praying the Court for an order adopting Tom & Lawson Ozment as the sons of the said J. Y. Mann and it appearing from the evidence of the said J. Y. Mann and others that the said Tom Ozment is only 8 years of age and Lawson Ozment is 11 years old and that the said children have no parents living. The Petition of the said J. Y. Mann is by the Court considered and granted. It is Therefore by the Court ordered that the said children be and they are hereby adopted as the sons of the said J. Y. Mann and they shall be entitled to and receive all the rights and interests in the estate of such adopted Father by descent or otherwise.

"It is ordered that Court adjourn until Tuesday Morning at 9 O'Clock. s/ J. C. Bratton, Judge."

[3] *Nunc pro tunc* orders in adoption matters have been considered by this Court in a number of cases, of which the following are some: *Dean* v. *Brown,* 216 Ark. 761, 227 S. W. 2d 623; *Grimes* v. *Jones,* 193 Ark. 858, 103 S. W. 2d 359; *Newell* v. *Black,* 201 Ark. 937, 147 S. W. 2d 991; *Ward* v. *Magness,* 75 Ark. 12, 86 S. W. 822. For *nunc pro tunc* orders generally see: *Vaughan* v. *Vaughan,* 223 Ark. 934, 270 S. W. 2d 915; and *Eiland* v. *Parkers Chapel Church,* 222 Ark. 552, 261 S. W. 2d 795, and cases there cited.

Then, on December 4, 1961—at the same term[4] in which the September 1, 1961 *nunc pro tunc* order had been entered —the Bradley Probate Court, on its own motion, set aside the September 1, 1961 *nunc pro tunc* order, and, with the attorney for the appellants present, entered an order *nunc pro tunc* regarding the original adoption order of 1898; and the germane portion of said December 4, 1961 order reads:

"It is therefore, by the Court considered, ordered and adjudged that the Petition for Order *Nunc Pro Tunc* and Amendment to Petition for Order *Nunc Pro Tunc* filed herein, be, and the same is granted and the clerk of this Court, be, and he is hereby directed to enter now for then the following corrected order and judgment: 'Come J. Y. Mann and files his Petition praying the court for an order adopting Tom and Lawson Ozment as the Sons of the said J. Y. Mann and it appearing from the evidence of the said J. Y. Mann and others that J. Y. Mann is a resident and citizen of Bradley County, Arkansas, and that the said Tom Ozment is only 8 years of age and Lawson Ozment is 11 years of age and that both Tom Ozment and Lawson Ozment are residents and citizens of Bradley County, Arkansas, and that the said children have no parents living. The Petition of the said J. Y. Mann is by the court considered and granted. It is therefore by the Court ordered that the said children, be, and they are hereby adopted as the sons of the said J. Y. Mann and they shall be entitled to receive all the rights and interests in the estate of such adopted Father by descent or otherwise.

"*It is further ordered that this order shall not in any wise either in law or equity be construed or held to effect or prejudice the rights of any person or persons who may have acquired either by purchase or descent any vested rights in the estate either real or personal of J. Y. Mann, now deceased, who have not had notice of the application*

---

[4] The terms of the Bradley Probate Court are fixed by statute (§§ 62-2004 and 22-406 Ark. Stats.) as being the fourth Monday in January and the second Monday in June of each year. The order of December 4, 1961 was at the same term as the September 1, 1961 order; so we must consider the December 4, 1961 order as the only valid *nunc pro tunc* order.

*for this nunc pro tunc order and/or the proceedings. All rights of said person or persons not having said notice are hereby preserved.* (Emphasis supplied.)

"IT IS SO ORDERED.

"To all of which the Petitioner objects and excepts, which objections and exceptions are hereby noted of record. /s/ James Merritt, Probate Judge.' "

Appellants object very strenuously to the italicized portion of the December order and claim that the Bradley Probate Court had no right to add such a limitation on the *nunc pro tunc* order. But the fact remains that the Bradley Probate Court, on its own initiative, had full power at the same term to set aside any order it had made. *Stinson* v. *Stinson,* 203 Ark. 883, 159 S. W. 2d 446; *Wright* v. *Ford,* 216 Ark. 55, 224 S. W. 2d 50; *Hill* v. *Wilson,* 216 Ark. 179, 224 S. W. 2d 797; *Eakin* v. *Cities Service Co.,* 228 Ark. 979, 311 S. W. 2d 530; and West's Digest, "Judgment" § 341. So the December 4, 1961 order *nunc pro tunc* is the only one left to be considered.

III. *The Effect In The Present Case Of The Nunc Pro Tunc Order Of December 4, 1961.* The appellants claim that the Bradley Probate Court should not have included in the *nunc pro tunc* order of December 4, 1961 the italicized paragraph, as heretofore quoted. There are several answers to this claim of the appellants. In the first place, the appellants could have given due notice to the appellees of the intention to have a hearing on the motion for order *nunc pro tunc,* and thereby have the appellees bound by whatever order might have been entered.[5] Secondly, the appellants could have challenged by direct appeal the power of the Bradley Probate Court to include the italicized language in the *nunc pro tunc* order of December 4th; but it does not appear that this course of procedure has been pursued.

---

[5] In *Simpson* v. *Talbot,* 72 Ark. 185, 79 S. W. 761, Mr. Justice Battle said: "The Chancery Court had the authority to amend the record of its decree at a subsequent term, so as to make it speak the truth, but it cannot do so without notice first given to the party against whom it is made. *Martin* v. *State Bank,* 20 Ark. 636; *Alexander* v. *Stewart,* 23 Ark. 118; *King* v. *Clay,* 34 Ark. 300." To the same effect see *Irby* v. *Drusch,* 216 Ark. 130, 224 S. W. 2d 366.

A court, such as the probate court, has power to limit the relief that it may grant. See *Quality Excelsior Coal Co.* v. *Reeves,* 206 Ark. 713, 177 S. W. 2d 827. Particularly in *nunc pro tunc* proceedings a court should be careful to see that the rights of innocent third parties are not prejudiced by orders made long after the original record of proceedings has been published. In *Melton* v. *St. L. I. M. & S. Ry.,* 99 Ark. 433, 139 S. W. 289, Justice Frauenthal recognized that the rights of innocent third parties are not to be prejudiced by the entry of an order *nunc pro tunc.* In American Jurisprudence, Vol. 30A, page 580, "Judgments" § 594, the holdings are summarized as regards entering of orders *nunc pro tunc:*

"The acts of a court in rectifying an error or misprision in its own records of judgments in having the corrected entry made *nunc pro tunc* are often declared to be largely a matter of judicial discretion, . . . and it would seem that the exercise of the discretion should be confined to the determination of questions of fact and of considerations such as the effect of the entry on innocent third persons, . . . "

And again, in American Jurisprudence, Vol. 30A, page 601, "Judgments" § 626, in discussing *nunc pro tunc* orders as affects the rights of third persons and the power of the court to make protective provisions in entering the orders *nunc pro tunc,* the holdings are summarized:

"It is a doctrine adhered to by many courts that when it becomes necessary to correct the record of a judgment by an amendment thereof and the entry of the amendment *nunc pro tunc,* such corrective action will not be taken to prejudice or affect adversely the rights of innocent third persons, acquired intermediate the original judgment and its amendment *nunc pro tunc,* especially where such third persons have superior equities due to their diligence in making the property involved subject to the payment of the debts. By way of removing all doubt, the protection

accorded the intervening rights is sometimes expressed in the order allowing the amendment, . . ."[6]

In objecting to the italicized portion of the *nunc pro tunc* order of December 4, 1961, the appellants are in the inconsistent position of relying on the December *nunc pro tunc* order to make valid the void adoption order of 1898, and at the same time attacking the very order on which they rely. On the present appeal we must give full effect to the entire order of December 4, 1961. The case of *Grimes v. Jones*, 193 Ark. 858, 103 S. W. 2d 359, affords the appellants no support; because in that case the *nunc pro tunc* order contained no savings clause for innocent third persons or unnotified parties; whereas the *nunc pro tunc* order of December 4, 1961 here before us contains such a savings clause.

As heretofore recited, J. Y. Mann departed this life intestate in 1928, and the title to the lands here involved vested in the appellees (as admittedly being some of his heirs at law), subject to the widow's rights;[7] so the appellees had a right to be heard in the Bradley Probate Court in any attempt to rectify the original Probate Court adoption order. Their rights were protected by the savings clause. The appellants have failed to prove by a valid and unconditional order of adoption that the Ozment boys were ever legally adopted by J. Y. Mann. The Chancery Court dismissed the appellants' complaint; we find no error; and the decree is affirmed.

JOHNSON, J., dissents.

PAUL WARD, Associate Justice (dissenting). The majority affirm the case on the ground that no notice was given to appellees when appellants petitioned for the two *nunc pro tunc* orders. My reasons for disagreeing with the majority are as hereafter set out.

1. It was not necessary, in a proceeding of this type to give notice to appellees.

---

[6] See also the following: Freeman on Judgments, 5th Ed. § 138, 49 C. J. S. page 255, "Judgments" § 121; 2 C. J. S. page 427, "Adoption of Children" § 40 (d) ; and annotation in 14 A. L. R. 2d 224 entitled: "Necessity of notice of application or intention to correct error in judgment entry."

[7] Mr. J. Y. Mann's widow departed this life in 1961.

The cases relied on by the majority are not in point. The case cited by the majority to show notice must be given is *Simpson* v. *Talbot,* 72 Ark. 185, 79 S. W. 761. This was a mortgage foreclosure suit. After the decree was entered and after the term of the court had elapsed, one party applied to the court to have the decree amended to speak the truth. No notice was given to the other party to the foreclosure suit. In a short opinion this Court said:

"The chancery court had the authority to amend the record of its decree at a subsequent term, so as to make it speak the truth, but it cannot do so without notice first given to the party *against whom it is made.*" (Emphasis added.)

It seems clear to me that the italicized words of the court meant *against the other party to the original suit.* Any doubt as to whom the court meant in using the above words was removed by this Court in the case of *Irby* v. *Drusch,* 216 Ark. 130, 224 S. W. 2d 366. In that case this Court, in referring to the *Simpson* case, *supra,* said:

"The court's order was therefore erroneous for notice must first be *given to parties to the original action when nunc pro tunc relief is sought. Simpson* v. *Talbot,* 72 Ark. 185, 79 S. W. 761; *Bridwell* v. *Davis,* 206 Ark. 445, 175 S. W. 2d 992." (Emphasis added.)

It is hardly necessary to point out that these appellees *were not parties* to the original adoption proceedings in Bradley County on October 10, 1898.

2. In order to sustain the result reached by the majority opinion it is necessary to overrule the case of *Grimes* v. *Jones,* 193 Ark. 858, 103 S. W. 2d 359, which they completely ignored and which is, to my knowledge, the only case in point. In that case Grimes contended:

"that the appellees, under the amended pleadings, would be allowed to introduce an order of the probate court amending, *nunc pro tunc,* the original order of adoption; that the amending order was made *without notice to appellant;* that the first order was void *ab initio* . . ." (Emphasis added.)

In spite of such contention we affirmed the trial court.

In this case there are strong equities in favor of appellants who stand to lose their inheritance because of no fault on their part but because of a doubtful technicality of the law applied by the majority. In a court of equity all doubts should be resolved to achieve equity—not to defeat equity.

JOHNSON, J., joins in this dissent.