LEMON'S HEIRS vs. RECTOR ET AL.

The heirs or representatives of a deceased person, cannot, as a general rule, regularly maintain a bill in equity for the personal assets due to his estate, and which would descend to or be distributed to them—for the recovery of choses in action, an administrator or executor, only, can sue at law or in equity.

*Appeal from Pulaski Circuit Court in Chancery.*

The Hon. WILLIAM H. FEILD, Circuit Judge.

FOWLER, for the appellant. Even where there is an executor or administrator, who will not sue, or assent for the distributees to sue for chattels, to which they are entitled, such distributees

may file a bill in equity to enforce their rights. *Thomas vs. White,* 3 *Litt. Rep.* 180; *Woodward vs. Threlkeld,* 1 *A. K. Marsh Rep.* 10; *Deatley, &c., vs. Murphey, &c., ib.* 480.

A sole heir and distributee may recover possession of the estate, by suit, without an administration—the personal as well as real —and where there are no debts, and the entire balance of the estate has been long settled, as in this case, it would be an idle ceremony to take out letters of administration. *Hyde vs. Stone,* 7 *Wend. Rep.* 358; *Frazier vs. Wallace,* 1 *Richardson Eq. Rep.* 23; *Danley vs. Edwards et al,* 1 *Ark. R.* 437; 4 *Smedes & Marsh. Rep.* 711; 4 *How.* (*Miss.*) *Rep.* 458.

BERTRAND and CURRAN, contra. We venture the assertion, that no case can be found authorizing the heirs to sue for the enforcement of a decree for money recovered by the administrator, or to enforce the collection of any chose in action. The cases cited from 7 *Wend.* 358, 1 *Ark.* 437, 4 *Sm. & Marsh.* 71, and 4 *How.* (*Miss.*) 458, are suits by heirs for the recovery of *property.* See the case of *Davis vs. Rhone,* 1 *McCord's Ch.* 191, 195.

The decree could be enforced only in the name of an *ad. d. b. n.,* (*Dig., ch.* 93, *sec.* 20; *ch.* 4, *sec.* 37.

Mr. Justice SCOTT delivered the opinion of the Court.

The appellants allege, in their bill, that they are the heirs at law of James Lemon, who died may years ago. That, on the 28th of April, A. D. 1832, their ancestor filed his bill in chancery, against the appellees, (on whom process was served,) but died intestate before final decree. That, after his death, the cause was revived by Thomas Mathers, as administrator, and a final decree obtained for the sum of $250 principal, $127 interest then accrued, together with 6 per cent. interest from that date upon the principal sum, besides costs. That, soon afterwards, Mathers died, and James DeBaun succeeded him as administrator *de bonis non,* and the decree was revived, in his name, on the 25th of November, 1841. That a part of the money decreed was made under execution, and

the balance remained unpaid at the time of the death of DeBaun, who has also departed this life. ' That, since the death of DeBaun, no person whomsoever has administered on their ancestor's estate, which, with the exception of the balance due upon the decree, was fully administered before DeBaun's death, or was wasted by gross negligence of his several and successive administrators. That his debts and liabilities, however, were all fully paid and satisfied, so that the complainants, as his heirs and distributees, are, exclusively, entitled to the balance of the proceeds of this decree, and that the adult heirs at law are all non-residents of this State, and unable to give the security prerequisite for obtaining letters of administration. The prayer of the bill is for a decree enforcing the original decree in their own names, and for their own benefit. Noland demurred to the bill, and it was taken as confessed against the other two defendants. The demurrer was sustained, and the bill dismissed, and an appeal taken to this court.

It is a general rule of well settled law, that there can be, regularly, no suit for the recovery of the personal assets of an estate, but by the executor or administrator, who has the right to sue both at law and in equity.

This is in harmony with the doctrine, that the personalty does not, technically, descend like the realty, but vests in the executor or administrator, for the payment of debts, and for distribution, under the provisions of the statute. Thus, the executor or administrator becomes a trustee for creditors and distributees, and this general rule makes him the only regular organ through whom their rights can be ascertained, when asserted by a suit, and the law requires the formality of an administration, as necessary for the security of these rights.

Special cases, however, have been allowed, both in England and in this country, which form exceptions to this rule. The most common of these, in England, were cases of bankruptcy, or insolvency of the executor, or of collusion by him with the debtor of the estate, or with any one who improperly withheld any of the personal assets. In this country, where bond and security are,

in general, required, as a prerequisite for administration, it may be doubted whether mere insolvency or bankruptcy, where the executor or administrator has complied with these terms, would now constitute such a case, unless coupled with some abuse of his trust, and even, in that case, the Probate Court, in this State, has ample power to afford the most prompt and complete remedy. Special cases, however, predicated upon collusion, are referable to the chancellor's jurisdiction, in cases of fraud and trust; and, like fraud in general, collusion is not to be precisely defined, since it necessarily varies, in its aspect, with the circumstances of the almost infinite variety of cases, that might occur, in which it might be perceived. If to this general head of collusion, all abuses of the representative trust, whether active or passive, could be referred, it would embrace a very large proportion of the special cases that have been allowed, whether at the suit of a creditor of the estate, or of a distributee, or whether to recover a chose in action or a personal chattel. But it would not embrace them all; because, in some few cases, where there is no pretence of abuse, personal property has been allowed to be recovered at the suit of the distributee, when the executor or administrator has, in express terms, given his assent, upon the idea that the property descended to the heir, *sub modo*, through the statute of distributions, and that the express assent of the executor or administrator, to the prosecution of the suit, was analogous, and equivalent to the executor's assent to a special legacy.

If these special cases are much indulged in this State, it is manifest that our administration system cannot fail to be seriously disturbed by them. And although presenting themselves in the specious garb of simplicity and directness, their tendency will far more likely be to complicate and entangle both the rights of creditors and distributees, as well as the accounts of executors and administrators.

Policy will, perhaps, tolerate a wider departure from the rule in cases of personal property, than of choses in action, for the double reason that the latter is more directly and emphatically a

fund for the payment of debts than the former, and the rights, both of creditors and distributees, would be less jeopardised, because property could be more readily identified and reclaimed, when it might pass into improper hands, than money. But, in either class of cases, the considerations we have urged strongly urge that the rule should be seldom relaxed.

Whether, according to the weight of authority, the rule would be more readily relaxed in cases of personal property, than of choses in action, it is not necessary now to determine. It is sufficient to ascertain, whether it can be relaxed so much as to authorize us to sustain this bill. Its only material feature, to distinguish it from bills that might be filed by distributees in good faith, in a very great number of cases, soon after the death of the intestate, is, that, from the lapse of time, which appears upon its face, the period fixed by our statute for the presentation of claims against the estate, has long since expired; and, hence, there is no probability that any claim now unknown, recoverable against the representative of an estate, can ever be, hereafter, brought to light. If this feature could be regarded as equivalent to the answer of an executor or administrator, admitting the truth of the allegations of a like bill filed against him, as a joint defendant with the debtor proceeded against, there might be found, in some of the special cases, that have been allowed, some precedents going to favor the idea that it might be retained as one of these; but it is impossible that it can be so regarded, because, although no valid claim against the estate, recoverable against its representative, can in future be brought to light, that does not, in the least, sustain the allegation that the debts and liabilities, heretofore known, have all been paid and satisfied. So far as the rights of creditors are concerned, who may have heretofore had their claims allowed in the Probate Court, in the progress of the administration, there is no guaranty at all in a bill like this, where neither they themselves, nor any executor or administrator, are parties defendant, to call in question the truth of the allegations of the bill touching their interests; and hence, as to such rights the bill is, in substance,

purely *ex parte*, the debtor proceeded against being indifferent as to whom he may make payment under the sanction of the chancellor. And, aside from this objection, in no case whatever should a recovery be allowed, although a regular executor or administrator might be a party defendant, unless upon the terms that the money should be brought into court, and then distributed according to the statute: otherwise, there would be no security for the rights of distributees among themselves, especially for such of them as might be minors, as some of those are in the case before us.

And no special case, where either a creditor or distributee has proceeded for the recovery of a chose in action, has been cited, or is known to us, which comes up to the full support of this bill; while, on the other hand, besides the general considerations against it, which we have presented, there are authorities, both English and American, entitled to high respect, which repudiate it.

In the case of *Humphry vs. Humphry*, 3 *P. Williams* 347, which was a bill filed for an account of the personal estate, by the party entitled to it as distributee, and who had the right of administration, the Lord Chancellor sustained a demurrer to the bill upon the ground that it could not be maintained, even by such a party without administration actually taken out. And afterwards, upon application, leave was given to take out administration, and charge this by way of amendment.

The case of *Bradford vs. Felder*, 2 *McCord's Ch. R.* 170, was like it, and was disposed of in the same manner.

In the previous cases, in South Carolina, of *Farley vs. Farley*, 1 *McCord's Ch. Rep.* 506, and of *Forester vs. Forester*, id. 325, where the whole subject seems to have been well considered, and the authorities fully examined, the bills were dismissed, on the ground that administration had not been taken out.

And, before that time, in the case of *Elder vs. Vanters*, 4 *Dessau. Ch. Rep.* 155, the chancellor had, upon the same ground of want of administration, in a case where a slave was in controversy,

56BB

refused to permit the complainant to retain the slave, which he had bought from the next of kin, though it was admitted that the debts were all paid, and although he held under a bill of sale, purporting to be for a valuable consideration, and had been in possession for ten years.

And these cases are all in harmony with the rule, that, in any proper case, where the chancellor may interpose, and restrain an executor from obtaining the possession of assets, and appoint a receiver to do so, the name of the executor must, nevertheless, be used, and he will be compelled to allow it. *Utterson vs. Muir,* 2 *Versey J.* 98, *and notes to Sumner's Edition; Taylor vs. Allen,* 2 *Atkins Rep.* 213.

There are two other reported cases, in South Carolina, subsequently decided—the one upon the authority of the other—apparently without any examination of authority, and without any reference to the cases we have mentioned, where the question was, whether or not the marital rights of the husband had attached. The decision was to the effect that, when a *feme sole,* being the only distributee, takes the possession of the personal property, without any administration had, and subsequently marries, the marital rights of the husband attach to the property. In one of these cases, the chancellor said, "James M. Spann was entitled to the administration in right of his wife. But to what purpose should he have administered? There were no debts to pay, and no distribution to make. Was it simply that he might get possession of his own rights? That would have been going through a nugatory ceremony. Or, if any other person had administered, could the property have been recovered from him? No. By going into equity, and showing there was no debt, and that his wife was exclusively entitled, a recovery at law would have been restrained." Upon these observations, the reporter appends the following remark, in a note, to wit: "If another administering, could recover the property at law from the husband, unless restrained by injunction, (which seems to be admitted,) does this not prove that the legal estate has not vested in the husband;

and, consequently, that the marital rights had not attached?"
1 *Richardson's Eq. R.* 23, *Haiser vs. Wallace.*

But, irrespective of the objection suggested in this note, the
case is not a parallel one, to say nothing of its conflict, in prin-
ciple, with the other cases cited from that State, because, in that
case, the party was sole distributee, upon which circumstance
stress is distinctly laid, while, in the case before us, after recovery,
distribution among the several distributees would have to be
made.

The other cases, cited in support of the bill, were all bills for
the recovery of personal property, and not for choses in action,
and may be referred either to the general head of collusion, in
the comprehensive sense which we have suggested, or to the
express assent of the executor or administrator.

By an act of our Legislature, passed in December, 1846, (*Di-
gest, ch.* 4, *p.* 110, *secs.* 3 *and* 4,) providing that when one shall
die, leaving a widow or children, and an estate not exceeding in
value the sum of three hundred dollars, that the Probate Court
shall make an order vesting such estate absolutely in such widow,
or children, there was the further provision that it should not be
the duty of the clerk or judge to issue letters of administration
on the estates of any deceased persons, unless it should be neces-
sary to preserve the same from waste or damage, or to protect
the rights of creditors. But, these provisions can have no bearing
upon the principles of law we have been considering, unless it
could be concluded that the Legislature designed, in this indirect
way, to abolish the rule that the personal estate does not techni-
cally descend, but vests in the representative for the payment of
debts and for distribution. For which conclusion, there would
seem to be but little foundation in these provisions, manifestly
designed only for particular cases, and to tolerate the want of
administration in those particular cases, when the parties, in effect,
agree to dispense with the aid of the law at their own peril.

From the refusal to entertain such bills as this, no possible
hardship can arise, because, our statute has made, in its various

enactments, the most ample and complete provisions for all such cases; and there is, therefore, less reason for admitting these special cases here than in England, or some of the sister States.

We think that the decree of the court below, dismissing the bill, was correct, and that it ought to be affirmed.