DEAN *v.* SMITH.

4-4892

Opinion delivered February 14, 1938.

*H. M. Barney* and *Frank S. Quinn,* for appellant.

*Shaver, Shaver & Williams,* for appellees.

GRIFFIN SMITH, C. J. The probate court for Miller county sustained a demurrer to a petition filed by Lida Dean Smith and Evelyn Smith *et al.* The petitioners appealed to circuit court, where the demurrer was overruled. This appeal is from a judgment of the circuit court granting the relief prayed for by petitioners, appellees herein.

Nettie Dean Smith and Arthur Dean, brother and sister, were the only surviving children of T. M. Dean. Nettie Dean married D. E. Smith. In 1921 and in 1923 they resided at Arkadelphia, in Clark county. They had no children of their own. In December, 1921, they adopted a five-months-old girl and named her "Lida Dean Smith." In November, 1923, a fifteen-months-old girl was adopted. She was named "Evelyn Elizabeth Smith."

Nettie Dean Smith died April 10, 1934. By her will the husband, D. E. Smith, and each of the girls, was left the sum of one dollar. The remainder of the estate was devised and bequeathed to D. E. Smith as trustee for the girls, with certain personal privileges and rights. In her will Mrs. Smith referred to the girls as "my daughters." It is dated March 17, 1934.

T. M. Dean died April 26, 1934. It will be noted that Nettie Dean Smith predeceased her father by sixteen days.

In his will, executed in 1924, T. M. Dean directed that his estate should go to Arthur Dean and Nettie Dean Smith in equal shares, and these beneficiaries were named as executor and executrix.

Control of the estate was assumed by Arthur Dean, who questioned the right of the adopted children of his sister to take that part of T. M. Dean's estate intended for Nettie Dean Smith. It is his contention that § 14527 of Pope's Digest, which changes the common law rule applicable to bequests and devises in favor of a child or other descendant of a testator who predeceases such testator, has no application to the instant case because, as appellant insists, "§ 14527 is not intended to abrogate the common law rule as to lapse, but rather to modify or narrow and conform that rule to our statute of descent and distribution regulating the devolution of property of persons dying intestate, so as to keep same within the blood line of such person. The saving of the statute relates only to descendants of the predeceased legatee or devisee, and thus related by blood in the descending line to the testator."

It is also urged that there are jurisdictional defects in the judgments of adoption which render them susceptible to collateral attack.

Appellant reasons that an adopted child is neither "issue" nor "descendant;" that "child or descendant is offspring of the named predeceased legatee or devisee; issue of the body and lineal descendant of such offspring, and not an adopted child."

Act 137 of 1935 covers the subject of adoption of children and defines their status. It was enacted subsequent to the transactions affected by this suit. We must, therefore, look to Crawford & Moses' Digest for the law of the case.

Section 255, C. & M. Digest, reads as follows: "After the adoption of such child, such adopted father or mother shall occupy the same position toward such child that he or she would if the natural father or mother, and be liable for the maintenance, education, and every other way responsible as a natural father or mother." Section 254 provides, in part, that "From and after the adoption of such child it shall take the name in which it is adopted, and be entitled to, and receive all the rights and interests in the estate of such adopted father or mother by descent or otherwise, that such child would do if the natural heir of such adopted father or mother."

Section 10509 of Crawford & Moses' Digest is brought into Pope's Digest as § 14527. It was not affected by the 1935 (act 137) adoption laws.

Paraphrasing the pertinent provisions of the section, and applying the result to the present controversy, we would have this situation: "If T. M. Dean devised and bequeathed one-half of his property to his daughter, Nettie Dean Smith, who predeceased him; and if Nettie Dean Smith left children or other descendants surviving T. N. Dean; then, in that event, the legacy or devise so made by such testator in favor of Nettie Dean Smith shall not lapse, but the property so devised or bequeathed shall vest in such surviving children or other descendants of Nettie Dean Smith."

Appellant denies that Lida Dean Smith and Evelyn Smith are daughters of Nettie Dean Smith within the meaning of the statute preventing the lapsing of legacies and devises, and argues applicability of the general principle that because a will does not take effect until the death of the testator, no benefits can be communicated to persons who have previously died. The answer to this contention is found in *Galloway* v. *Darby,* 105 Ark. 558, 151 S. W. 1014, where it is said: "The rule is established beyond controversy, except where changed by statute, that a legacy or devise lapses when the legatee or devisee dies before the testator." The opinion, written by Chief Justice McCulloch, then says: "A statute of this state changes that rule as to a legacy or devise to a child or other descendant . . . and provides that it shall not lapse." See, also, *Gibbons* v. *Ward,* 115 Ark. 184, 171 S. W. 90.

Decisions from other jurisdictions are cited in support of appellant's contention that the word "descendant," and the word "children," mean those who have issued from an individual standing in blood relationship, "and include children, grandchildren, and their children to the remotest degree, but do not include collateral relations."

In *Shaver* v. *Nash,* 181 Ark. 1112, 29 S. W. 2d 298, in commenting upon the rights of an adopted child to inherit from its adoptive parent, we said: "An adopted child not only becomes an heir, but its surviving parents solemnly renounce parenthood, which vest all its attending liabilities on the parent by adoption. The adopted child ceases to be a member of the family of its natural parents and becomes a member of the family of its adoptive parent who has the custody and control of it, and it becomes, not merely the heir, but the child, born such by the will of the adoptive parent." See, also, *James* v. *Helmich,* 186 Ark. 1053, 57 S. W. 2d 829.

In *Sanders* v. *Taylor,* 193 Ark. 1095, 104 S. W. 2d 797, it was said: "We think the effect of our late decisions, previous to the passage of act 137 [of 1935] places the legal status of adopted children exactly as of those

born in wedlock. Both classes are to be deemed children within the spirit and meaning of our law." *Grimes* v. *Jones,* 193 Ark. 858, 103 S. W. 2d 359.

In the Grimes case it was held that a child adopted three years after the adoptive parent had made a will, such child not having been named in the will, would stand in the position of a natural child born subsequent to the execution of the will, and would be protected under § 10506 of Crawford & Moses' Digest.

It seems conclusive from these decisions and from statutory provisions that the intention of the lawmakers, as interpreted by this court, was to invest an adopted child with all of the attributes of a natural child which it was possible for the law to confer. The language of §§ 254 and 255 of Crawford & Moses' Digest admits of no other construction. If, instead of being adopted daughters, Lida and Evelyn Smith had been the natural daughters of Nettie Dean Smith, admittedly provisions of the will of T. M. Dean in favor of Nettie Dean Smith would have inured to the benefit of Lida and Evelyn. Use of the words "natural father or mother" in the Digest implies a clear intent to substitute "adopted" for "natural," and to make the terms interchangeable or synonymous in those cases where the relationship is questioned.

When this is done the distinction, in legal contemplation, disappears, and such adopted child, by operation of law, becomes the child in fact.

■ It is next urged that the record of adoption discloses jurisdictional defects, and that the judgments are subject to collateral attack.

This allegation is based upon an averment in the petitions for adoption (each being similar) that "To the knowledge of the petitioners and witnesses said minor has no living parent or parents, or that if she has living parent or parents their address is unknown."

Appellant, in his brief, says: "Among the jurisdictional facts required to appear in the record to affirmatively show jurisdiction are: (1) Whether such child has either father or mother living, and (a) if so, where they reside. (2) If the child have father or mother liv-

ing, such court shall not order adoption unless the father or mother appear in open court and give consent thereto; (3) provided, that if such petitioner show by two competent witnesses that the residence of such father or mother be unknown, then such court may order the adoption of such child. . . . The recital in the judgment, . . . being in the disjunctive alternate, does not state a jurisdictional fact, but only that such child has no living parents, or that if she has living parents their address is unknown, without any possibility of ascertaining which is the fact.''

Our attention is directed to *Holloway* v. *Holloway*, 85 Ark. 431, 108 S. W. 837, where this language appears: ''The affidavit [for a warning order] is in the alternative, and neither states the fact of nonresidence nor that the defendant conceals himself so that a summons cannot be served upon him. It simply states one or the other, without any possibility of ascertaining which.''

Section 253 of Crawford & Moses' Digest requires that the petition for adoption of a child ''Shall specify, first, the name of such petitioner; second, the name of such child, its age, whether it has any property, and, if so, how much; third; whether such child has either father or mother living, and, if so, where they reside.'' Section 256 provides: ''Such court shall not adopt such child, if it have a father or mother living, unless such father or mother appear in open court and give consent thereto, provided, that if such petition show by two competent witnesses that the residence of such father or mother be unknown, then such court may order the adoption of such child.''

At the hearing in circuit court counsel for appellees, over the objections of appellant, introduced original judgments of the Clark probate court, granting adoption of the two children. The principal objections were, as mentioned *supra,* that the situation of the parents of the children (whether living or dead, or if living, whether their residence was known or unknown) was stated in the alternative.

620

In *Morris* v. *Dooley,* 59 Ark. 483, 28 S. W. 420, it was held that "A proceeding in the probate court to adopt a child is a special statutory proceeding, not according to the course of the common law, nor in the exercise of the court's general jurisdiction; and a judgment rendered therein will be void upon collateral attack if neither the judgment entry nor the petition states that the child was a resident of the county."

It was not requisite under laws in force at the time Nettie Dean Smith and D. E. Smith filed their petitions for adoption that the court orders should recite the jurisdictional facts which appellant contends should have been included. Section 253, C. & M. Digest, enumerates the several requirements. It includes a direction that "Such *petition* shall specify . . . whether such child has either father or mother living, and, if so, where they reside." If this information is not available to a petitioner, an alternative is found in § 256. Under this section it is not necessary to allege that the father or mother, or either of them, is dead, but only that such residence is unknown. This must be established by two competent witnesses.

In *Willis* v. *Bell,* 86 Ark. 473, 111 S. W. 808, it was held that jurisdiction of the probate court was dependent upon the express consent of the parents unless their residence be shown to be unknown, and "This evidently means that the consent of both living parents be given." In that case, however, the opinion recited that "The record of the adoption proceedings show affirmatively that the father was living at the time, and does not show that his place of residence was unknown."

We do not concur with appellant in his contention that the orders of adoption are expressed in the "disjunctive alternate." They read: "To the knowledge of petitioner and witnesses that said minor has no living parents, and that if she has living parent or parents their said address is unknown."

In the Holloway case, mentioned *supra,* the affidavit was: "The defendant is at present a nonresident of the

state of Arkansas, or so conceals himself that a process of summons cannot be served upon him.''

It will be observed that the disjunctive "or" was used in the Holloway case; whereas, in the instant case, there appears the conjunction "and"—"and that if she have living parents," etc.

The petitions were brought into the record on appellant's motion, and they show that "or" was used. But the record further shows that, with respect to each of the proceedings, two witnesses were called. After these witnesses had been heard, the court, in the order of adoption, used "and" where "or" had appeared in the petitions.

It is our view that there was a substantial compliance with the statute. *Coleman* v. *Coleman,* 81 Ark. 7, 98 S. W. 733; *Taylor* v. *Collins,* 172 Ark. 466, 289 S. W. 466.

The judgment is affirmed.