DEAN v. BROWN.

4-9093                                    227 S. W. 2d 623

Opinion delivered March 6, 1950.
Rehearing denied April 3, 1950.

*Embry & Sutton* and *Campbell & Campbell,* for appellant.

*Hebert & Dobbs,* for appellee.

ED. F. McFADDIN, Justice. This appeal necessitates the determination of (1) the validity of an order of adoption made in 1911, and (2) the effect of subsequent legislation concerning matters of adoption.

Appellant, Mrs. Gloria Crawford Dean, was born in Garland County, Arkansas, in 1908, the child of Mr. and Mrs. Charles W. Bond, and was named "Nettie Bond". The child's mother died in the early part of 1911; and on October 2, 1911, Bert Crawford, and Mrs. Eva Crawford, his wife, filed petition in the Garland Probate Court to adopt Nettie Bond. The petition, omitting caption, signature and jurat, reads:

"Comes Bert Crawford and Eva Crawford, his wife, and asks this Honorable Court to make an order adopting Nettie Brown Bond, a minor, and state:

"That they are *bona fide* residents of Hot Springs, Garland County, Arkansas, for more than one year. That they desire to adopt Nettie Brown Bond, a female minor child of C. W. Bond, of the age of three years; that the mother of said child is dead; that it has no property coming to it; that the father of said minor consents that this order be made:

"Wherefore petitioners ask that said order be made and that they be permitted to adopt said minor and that it be permitted to take and be known by the name Gloria Brown Crawford."

On the petition, there was this statement with a signature and jurat:

"C. W. Bond being duly sworn states: that he is the father of said above mentioned minor; that all the facts above set out are true, and that he is willing and requests that this order of adoption be made."

The record of the Garland Probate Court of October 11, 1911, contains the following order:

"Comes Bert Crawford and Eva Crawford, his wife, and file in open Court their petition asking that they be permitted to adopt Nettie Brown Bond, a minor, a child of three years of age.

"And it appearing to the Court that the mother of the said child is dead and that the father, C. W. Bond, has given his written consent to said adoption, that said child has no property coming to it, that the said Bert and Eva Crawford are of good moral character and financially able to care for and maintain said minor child, said petition is by the Court granted.

"It is therefore by the Court considered, ordered and adjudged that from and after this date the said Nettie Brown Bond shall take the name and be henceforth known to the world as Gloria Brown Crawford; and shall be entitled to and receive all the rights and interest in the estate of the said Bert and Eva Crawford just the same as she was a natural heir of said petitioners."

We shall refer to the foregoing as "the order of adoption" or "adoption order," even though we hold (in § 1, *infra,*) that this order was not legally sufficient to effectuate adoption. The Crawfords took Nettie Bond into their home; and she became known as "Gloria Brown Crawford," and under that name attended school in Garland County for several years. By 1916, Mr. and Mrs. Crawford had separated, and even though Mrs. Crawford owned a home in Hot Springs, she professed herself financially unable to support the child and arranged to have Gloria (then eight years of age) go to Agra, Oklahoma, to live with a Mr. and Mrs. King. Mrs. Crawford was not related to the Kings; and a mutual friend had located the King home for the little girl. The appellant testified that she had intermittent correspondence with Mrs. Crawford until 1918; but after that year there was never any further contact between Mrs. Crawford and the child that she had attempted to adopt.

Gloria Brown Crawford continued to live with the Kings in Oklahoma. She was known as "Nettie King" and was educated by, and continued to live with, them as a daughter until her marriage in 1926. They had no

children, and though they never adopted Nettie, they gave her an Oklahoma farm. Just when and how this gift came about is not developed in the evidence.

Mrs. Eva Crawford continued to live in Hot Springs and, by remarriage, her last name became Priddy. She died intestate in Garland County, Arkansas, on February 2, 1947, leaving an estate of both realty and personalty; and an administrator of her estate was appointed on February 19, 1947. Her nieces and nephews, the appellees, are her heirs-at-law, unless appellant's adoption be held valid. When the nephews and nieces attempted to obtain a quitclaim deed from appellant in 1947, she learned of the death of Mrs. Crawford and the possibility of her inheritance. Thereupon—on September 13, 1948—appellant filed intervention in the administration proceedings in Garland County, and claimed the entire estate of Mrs. Eva Crawford Priddy, because of the 1911 adoption proceedings.

On November 24, 1948, the nephews and nieces (appellees) filed answer to the intervention and attacked the validity of the 1911 adoption order. This pleading was the first instrument filed in any court that questioned the validity of said adoption. There was a hearing in the Probate Court on the said intervention of appellant; and the facts were developed, as heretofore stated. The Probate Court adjudged the adoption to be void and dismissed the intervention. From that judgment there is this appeal, presenting the questions now to be discussed.

1. *Validity of the Adoption Order.* Act 28 of 1885 (found in § 1142 *et seq.*, Sandels and Hill's Digest of 1894; § 1341 *et seq.* of Kirby's Digest of 1904; and § 252 *et seq.*, Crawford and Moses' Digest of 1921) prescribes the jurisdictional essentials of a valid order of adoption. This 1885 Act was the law in 1911 when the order here involved was made, so we test the validity of the adoption order by that Act. (See *Dean* v. *Smith,* 195 Ark. 614, 113 S. W. 2d 485.)

One of the requirements of the 1885 Act was that the proceedings for adoption be conducted in the county

in which the minor resided. There is nothing in the order of adoption in the case at bar to show the county of residence of the minor; and we have repeatedly held that the allegation as to such residence must appear on the face of the order of adoption, or the order may be attacked collaterally. The first such case so holding was *Morris* v. *Dooley*,[1] 59 Ark. 483, 28 S. W. 30 and 430. Another case, so holding is *Minetree* v. *Minetree,* 181 Ark. 111, 26 S. W. 2d 101. In the last cited case, many other cases are listed as following the law recognized in *Morris* v. *Dooley.* The correctness of the holding in that case is not open to reconsideration by us at this time. There are many cases of this Court which hold to be void orders of adoption similar to the one at bar when the order failed to recite the residence of the minor. The case of *Morris* v. *Dooley* is directly in point, and we decline to overrule it; so we hold that the purported order of adoption made by the Garland Probate Court in 1911 is void on this collateral attack, because neither the order, nor the petition, showed that the minor, Nettie Bond, was a resident of Garland County, Arkansas, at the time the order was made.

II. *Motion for Order Nunc Pro Tunc.* By trial amendment the appellant asked the court to correct, by order *nunc pro tunc,* the defect in the 1911 order of adoption. The trial court was correct in refusing to grant this request. The function of an order *nunc pro tunc* is to have the record recite *now* what actually occurred *then.* In *Citizens Bank* v. *Commercial Bank,* 118 Ark. 497, 177 S. W. 21, we said: "The purpose of a *nunc pro tunc* order is to make the record reflect the transaction that actually occurred. . . ." In *Liddell* v. *Landau,* 87 Ark. 438, 112 S. W. 1085, we said of the power to correct a record *nunc pro tunc*: "This power can never be used to make the record speak what it should have spoken but what it did not in fact speak; . . ." (See, also, *Hall* v. *Castleberry,* 204 Ark. 200, 161 S. W. 2d 948.)

---

[1] In the Southwestern Reporter this case is styled *Morris* v. *Pendergrass, Administrator.*

The evidence in the case at bar completely fails to show that any evidence was offered at the adoption proceedings in 1911 as to the residence of the minor. It is not for the court to decide now where Nettie Bond actually resided in 1911; the question is whether the court in 1911 heard evidence to show that the minor then resided in Garland County. There is in the record now before us no evidence on which a *nunc pro tunc* order could be based; and the trial court was correct in refusing to make it.

III. *Act 137 of 1935 and Act 369 of 1947.* Appellant claimed in the trial court, and reiterates here, that the various changes made in the adoption laws since 1911 have either cured, or rendered impervious to attack, the defect in the adoption order in this case. It is true that the Legislature has made several revisions and changes in the adoption law. Some of these are: Act 137 of 1935 (see § 254, *et seq.,* Pope's Digest); Act 157 of 1935 (see § 260, Pope's Digest); Act 328 of 1937 (see § 262, Pope's Digest); Act 369 of 1947 (see § 56-101 *et seq.,* Ark. Stats. 1947); and Act 408 of 1947 (see the note following § 56-112 Ark. Stats. 1947). We held in *Dean* v. *Smith,* 195 Ark. 614, 113 S. W. 2d 485, that the law in effect at the time of the purported adoption governed the validity and effect of the order. In the light of the above case, we examine the above Acts for either a curative Act or a statute of limitations; and then we determine the possible effect of such act or statute on the case at bar.

Sec. 10 of Act 137 of 1935 (found in § 264, Pope's Digest) reads:

"After a decree of adoption shall have been made and the child shall in fact have been adopted and the relation of parent and child has continued for the period of two years, the decree of adoption shall not be questioned by reason of any jurisdictional or procedural defects."

Section 13 of Act 369 of 1947 (found in § 56-112, Ark. Stats. 1947) reads:

"No action shall be brought to set aside an adoption decree for any procedural or jurisdictional defect except within two (2) years after its rendition, if the adopted person has in fact lived with the adopting parents that length of time, except on one of the grounds specified in section 11 (Sec. 56-110). (Acts 1947, No. 369, Sec. 13, P. 820)."

Appellant claims that each of these enactments makes the 1911 order of adoption impervious to attack because Nettie Bond lived with the Crawfords more than two years after the said order. We hold that each of these sections, as quoted above, is entirely prospective— *i. e.,* it relates to the effect to be given orders of adoption made *after* the enactment of said law (being 1935 and 1947 respectively)—and since the order here involved was made in 1911, these prospective Acts can afford no relief to the appellant.

IV. *Act 408 of 1947.* The caption of this Act reads:

"An ACT to Amend the Present Adoption Law and to Provide a Statute of Limitations in Such Proceedings and for Other Purposes."

Insofar as the statute purports to amend portions of the adoption laws, there is some question as to which is controlling as between (a) certain sections of Act 369 of 1947, and (b) sections 1, 2, and 4 of Act 408 of 1947. That question is posed in the note following § 56-112, Ark. Stats. 1947; but the answer to the question is not necessary to a decision in this case. We are here concerned with § 3 of said Act 408 of 1947, which purports to be a statute of limitations affecting adoption orders rendered theretofore or thereafter; and, as such a statute of limitation, § 3 is distinct legislation and different from anything in Act 369 of 1947, which, as we have said, is entirely prospective. Said § 3 reads in part:

"No decree or order of adoption heretofore made, or which may hereafter be made, by any court shall be subject to question or attack either for irregularities or jurisdictional defects at any time after two years from the date of the making of the same in the event the child

has in fact lived with the adopting parents for that length of time; . . . Provided, further, that this Act shall not apply to any suit now pending, seeking to invalidate any such decree or order or to any suit brought for said purpose within six months from the effective date of this Act."

Thus, the Act gave six months for suit to be filed to question the validity of any order of adoption theretofore rendered, under which the child had, in fact, lived with the adopting parents for as long as two years. The entire matter of adoption is statutory, and the Legislature in said § 3 enacted that when (a) adopting parents had kept a child for two years under a court order, and (b) no proceeding be filed within that time to challenge the order, then the adoption should be considered beyond attack. Said § 3 is not an attempt to merely make valid a void order; rather, it provides in effect that if parties had in good faith attempted to adopt a child under formal order of the Probate Court and had thereafter kept the child for two years without any proceeding to challenge the court order, then the adoption becomes perfected.

Persuasive of the contention that § 3 is a statute of limitations, that purpose is stated not only in the caption of the Act, but, also, a six months period is provided to allow challenge to be made of adoption proceedings which occurred more than two years prior to the effective date of the Act. We have a statute (§ 34-1419 Ark. Stats. 1947) which provides that no action shall be brought to recover lands sold at a tax sale if the purchaser (a) entered possession under an instrument containing a valid description, and (b) remained in possession for as long as two years. In a limited sense this § 3 of Act 408 may be likened to a two year statute of adverse possession of a child held under a court order intended to be an order of adoption. It is a salutary statute, evidently intended to overcome some of the hardships occasioned in exceptional cases by the holdings in *Morris* v. *Dooley, supra,* and *Minetree* v. *Minetree, supra.* These hardships were pointed out in the dissenting opin-

ions in each of the cases. So we hold that § 3 of Act 408 of 1947 is a valid statute of limitations in matters of adoption.

V. *Effect of Act 408 as Applied to This Case.* The Probate Court order attempting to adopt the appellant was entered in 1911, and appellant remained with the Crawfords until 1916 which was more than the two years provided by Act 408. But, unfortunately for the appellant, said § 3 of Act 408 gives her only partial assistance. This is because Mrs. Eva Crawford Priddy died on February 2, 1947; and Act 408 of 1947 did not become effective until March 28, 1947, that being the day it was approved.

Our statute provides that immediately upon the intestate's death, the title to *real estate* descends to the heirs at law, subject to the widow's dower* and the payment of debts. See § 61-101 Ark. Stats. 1947. The two sections (§ 62-411 and § 62-911, Ark. Stats. 1947), concerning lands as assets in the hands of the administrator, have been uniformly construed to mean that the title to the lands passes direct to the heirs on the death of the intestate, subject to the rights of the administrator to have the Probate Court sell the lands if such be necessary to pay the debts of the deceased. See *Hopson* v. *Oxford,* 72 Ark. 272, 79 S. W. 1051; *Jones* v. *Jones,* 107 Ark. 402, 155 S. W. 117; *Doke* v. *Benton County Lbr. Co.,* 114 Ark. 1, 169 S. W. 327; *Campbell* v. *Smith,* 167 Ark. 633, 268 S. W. 359 and 880; and *Miller* v. *Watkins,* 169 Ark. 60, 272 S. W. 846.

In the case at bar, the title to the *real estate* of Mrs. Eva Crawford Priddy vested in the appellees, as her heirs at law, immediately on her death on February 2, 1947, subject to the husband's curtesy if he was alive; and the Act 408 of 1947 was not adopted until March 28, following. It therefore could not retrospectively operate to divest appellees' title to the real estate of Mrs. Priddy. So, as regards the *real estate,* the appellant cannot prevail.

---

* If the decedent be a married woman—as here—then the words "widow's dower" become "husband's curtesy." See § 61-228, Ark. Stats. (1947).

As regards the *personalty* of the estate of Mrs. Priddy, a different situation exists; because the title to the personal property of an intestate becomes vested in the personal representative when appointed (*i. e.* the administrator in this case), and remains so vested until distributed upon proper orders of the Probate Court. See § 62-1302 Ark. Stats. 1947. In *Jensen* v. *Housley,* 207 Ark. 742, 182 S. W. 758, Mr. Justice ROBINS, speaking for this Court, said:

"The right of possession of the personal property of a decedent vests in his administrator upon his appointment. In the case of *Lambert* v. *Tucker,* 83 Ark. 416, 104 S. W. 131, we held: 'An administrator is entitled to possession of the personal property of his intestate as against the widow and heirs.' The rule is thus stated in C. J. S., Vol. 33, p. 1341: 'It is well established that as a general rule the legal title to personal property of which decedent died possessed does not vest at his death in his next of kin or distributees, . . . but vests, for the time being, in his executor or administrator, . . .' *Whelan* v. *Edwards,* 31 Ark. 723; *Pryor* v. *Ryburn,* 16 Ark. 671; *Lemon's Heirs* v. *Rector,* 15 Ark. 436; *Oldham* v. *Melton,* 205 Ark. 240, 168 S. W. 2d 387."

The administrator of the estate of Mrs. Eva Crawford Priddy was appointed on February 19, 1947. He took charge of the personalty and continues to hold it. The heirs at law have received no title to the personalty. Their claim to it is in the same status as though Mrs. Priddy was still living—*i.e.* subject to be changed by legislative action. On March 28, 1947, the Legislature enacted § 3 of Act 408 which gave the heirs at law of Mrs. Eva Crawford Priddy six months from that day within which to contest the adoption of appellant by Mrs. Eva Crawford Priddy. No such contest was filed within the time limit. It was not until November 24, *1948,* that the heirs filed their answer to the appellant's intervention in this case, and then for the first time questioned the adoption. That was too late under the plain provisions of § 3 of said Act 408; so appellant's adoption by Mrs. Eva Crawford Priddy is sufficient—because of

said § 3 of Act 408—to award appellant the personalty but not the realty.

It follows that the appellant is entitled to all of the personal property of the estate of Mrs. Eva Crawford Priddy remaining after payment of debts and costs of administration, but is entitled to none of the realty. The judgment of the Probate Court is therefore reversed as to the personalty, and the cause is remanded, with directions to proceed in accordance with this opinion. All costs of the proceedings are adjudged against the appellees.