Jacquelene A. WOOLSEY, Administratrix of the Estate of William Allen King, Deceased, Plaintiff,

v.

NATIONWIDE INSURANCE COMPANY, Defendant/Third–Party Plaintiff,

v.

Billy Ray KING, Anna King, Johnson County Regional Hospital, and Sparks Regional Medical Center, Third–Party Defendants.

Civ. No. 86–2243.

United States District Court, W.D. Arkansas, Fort Smith Division.

Oct. 14, 1988.

Bruce Wilson, Clarksville, Ark., for plaintiff.

Joe Benson, Fayetteville, Ark., for Nationwide.

Ike Laws, Russellville, Ark., for third-party defendants Billy Ray King and Anna King.

Jeffrey Levin, Clarksville, Ark., for third-party defendant Johnson County Regional Hosp.

Alan Wooten, Fort Smith, Ark., for third-party defendant Sparks Regional Medical Center.

## MEMORANDUM OPINION

MORRIS SHEPPARD ARNOLD, District Judge.

This is a suit by an administratrix to recover on an insurance policy in favor of her decedent. The policy provided three kinds of benefits: Collision loss, liability, and personal injury protection. The last of these benefits provided for an accidental death payment in the amount of $5,000.00, the payment of medical expenses up to a limit of $5,000.00, and indemnity for wages lost. Plaintiff's decedent was seriously injured in an automobile accident on July 9, 1985, and died three days later.

### I.

It is conceded that decedent incurred $10,693.99 in medical expenses on account of this accident: $8,622.19 to Sparks Medical Center, $1,135.80 to Johnson County Regional Hospital, $161.00 to Clarksville Medical Group, and $775.00 to Holt–Krock Clinic. It is also conceded that the defendant, at the request of third-party defendants Mr. and Mrs. King, parents of the deceased, paid the $5,000.00 medical benefits directly to Sparks Medical Center before the appointment of the administratrix. Plaintiff asserts that these monies should now be paid to the estate because the payment directly to Sparks was improper.

The answer to the question of whether the payment to Sparks was proper must be sought in the language of the relevant policy. The policy provides that medical benefits are payable "to or for the insured." Defendant maintains that in this case the payment was made "for" the insured because it was made to discharge a debt owed by the insured and was therefore made for his benefit. It is true, as plaintiff points out, that the payment was not made for the insured in the sense that it was not made at his behest or at the behest of his personal representative. The court, nevertheless, believes that the policy, in effect, gives the insurer the right to choose a beneficiary from among the insured's medical creditors, at least if the insured is unable to designate the creditor

who should receive payment. This is a natural construction of the contract, and that construction is aided by the fact that at the trial a representative of the defendant testified that it was common for defendant to make payments directly to creditors in these kinds of circumstances.

It is therefore the court's view that defendant's payment directly to Sparks Hospital was proper and that plaintiff should take nothing with respect to its claim for medical benefits.

## II.

It is likewise conceded that the $5,000.00 death benefit was paid to third-party defendants Mr. and Mrs. King at their request. As in the case of the medical benefits, the propriety of this payment must be determined by examining the provisions of the relevant policy. The policy provides for the payment of death benefits "to any person or organization authorized by law to receive such payment." A number of possible constructions of this phrase come to mind; but since Ark.Code Ann. § 23–89–202(3) mandates that all automobile liability policies include coverage for $5,000.00 in accidental death benefits "to be paid to the personal representative of the insured," the natural construction of the words in the policy would be that they authorize payment to the decedent's personal representative, not to his heirs or distributees.

It is true that the Supreme Court of Arkansas once held that a decedent's next of kin, in the absence of a personal representative, can maintain an action on an insurance policy that names the insured's personal representative as a beneficiary, on the ground that, if all the debts of the deceased are paid, the decedent's next of kin are entitled to the money. *See Metropolitan Life Insurance Co. v. Fitzgerald*, 137 Ark. 366, 209 S.W. 77 (1919). In such a case, the court said, "it would be magnifying form above substance ... to hold that

the [sole heir] could not maintain the suit." *Id.* at 373, 209 S.W. 77. The court based its decision mainly on the ground that the sole heir was the real party in interest and therefore entitled to bring suit. The court also noted, however, that the action was expressly authorized by § 15 of Kirby's Digest, passed in 1893 and now repealed, but formerly codified as Ark.Stat.Ann. § 62–2130.1. *Id.* at 373–74, 209 S.W. 77. That statute allowed an intestate's distributees and heirs, if they were of full age, to "sue for ... all demands ... left by the intestate ... without any administration being had thereon," so long as all creditors agreed or all the intestate's debts were paid.[1] Previous to the repeal of this statute, the Supreme Court of Arkansas held that it barred any suits by heirs or distributees unless the conditions of the statute were complied with, relying on the rule *expressio unius est exclusio alterius. Chisholm v. Crye*, 83 Ark. 495, 499, 104 S.W. 167 (1907).

Even before the repeal of this statute, the Arkansas legislature had passed, in 1949, another scheme, still in effect, with a complicated procedure for the settlement of estates of less than $25,000.00. The scheme is available if no personal representative has been appointed within 45 days after the death of the decedent and the distributees file with the probate court an affidavit setting forth certain particulars regarding the estate. Ark.Code Ann. § 28–41–101. If this is done, then anyone who pays to distributees debts owing the decedent "shall be released to the same extent as if [payment were] made to a personal representative of the decedent." Ark.Code Ann. § 28–41–102(a).

Though the matter is not free from doubt, it seems rather plain that the statutory enactments after *Metropolitan Life* have undermined the rule of that case and that heirs and distributees do not have a cause of action on their deceased's debts unless the statutory scheme is followed. It is conceded that it was not followed here

---

1. Later amendments to Kirby's Digest § 15 provided that an elaborate procedural scheme had to be followed before administration could be dispensed with and, furthermore, limited the availability of this procedure to estates "of an aggregate value less than three thousand dollars." *See* Ark.Stat.Ann. § 62–2130.1(a).

and thus the payment of the death benefits by defendant to Mr. and Mrs. King did not discharge the debt owed under the policy. Judgment will therefore be entered for plaintiff on this aspect of its claim.

Defendant asserts that if the payment to Mr. and Mrs.. King did not discharge the debt owed under the policy, then it is entitled to restitution of that amount from them because it was paid by mistake. The court deals with this aspect of the case in a later section.

### III.

■ The decedent's automobile was destroyed in the crash that resulted in his death and defendant paid $9,671.98 to third-party defendants Mr. and Mrs. King, again at their request, as settlement of its obligation to indemnify for collision loss under the insurance policy. The policy language provides no guidance with respect to the propriety of this payment; there is simply no beneficiary named. The court looks for guidance, then, in a consideration of who could enforce the policy if collision benefits were not paid. Certainly, a living named insured could. Ark.Code Ann. § 23–79–208, § 23–89–208. A personal representative, of course, succeeds to the contract rights of the decedent and would therefore have a right of action when, as here, the original obligee was deceased.

In this case, however, payment was made neither to the insured nor the personal representative but to the next of kin; and the first question that is squarely presented, therefore, is whether such a payment provides the defendant a good answer to an action by a subsequently appointed administratrix. As noted above, in the section dealing with the propriety of the medical benefits payment, under Arkansas law a deceased's personal property does not descend to his distributees unless certain statutory procedures are complied with.

Defendant concedes that the statutory procedure was not complied with. It follows that, under Arkansas law, the payment of the collision benefits to the distributees did not discharge the insurer's obligation to the deceased. The statutory procedure is mandatory; if it were not, then any payment to sole distributees would discharge an obligation to a decedent and make the statutory procedure superfluous and redundant.

### IV.

■ Defendant asserts, however, that if it is liable to plaintiff on the collision and death benefits portions of the relevant policy then it is entitled to restitution from the parents of the money mistakenly paid them. Defendant showed at trial that it made these payments thinking that it was obligated to do so and under the assumption that no estate would ever be opened. Arkansas law adheres to the familiar rule that a person who pays money on account of a mistake of fact is entitled to restitution, but he is not so entitled if the mistake was one of law. *See Northcross v. Miller,* 184 Ark. 463, 43 S.W.2d 734 (1931). This rule, in force in many states, has been vigorously criticized; *see, e.g.,* 3 G. Palmer, *The Law of Restitution* § 14.27 at 336–57 (1978). Indeed, one commentator has argued that the distinction announced by the rule is itself "a monstrous mistake of law." Patterson, *Improvements in the Law of Restitution,* 40 Cornell L.Q. 667, 676 (1955). It is nevertheless the duty of this court to apply the rule that the Supreme Court of Arkansas would apply. That court has never repudiated the principle that a mistake of law will not give rise to a restitutionary claim. It is worth noting, moreover, that the *Restatement of Restitution* § 45 (1937) states that "a person who, induced thereto solely by a mistake of law, has conferred a benefit to satisfy ... an honest claim of the other ... is not entitled to restitution." The Arkansas courts have sometimes made use of the *Restatement of Restitution* in deciding questions similar to the one presented here. *See, e.g., Glasgow v. Greenfield,* 9 Ark.App. 224, 657 S.W.2d 578 (1983) (en banc).

However, even if it is assumed that the Supreme Court of Arkansas would adhere to the principle that a restitutionary claim cannot be based on a mistake of law, there is ample reason to believe that that court

would allow restitution in this case. That is because defendant's payment was induced by both a mistake of law and one of fact. In such circumstances, the *Restatement of Restitution* takes the position that restitution is due. *See Restatement of Restitution* § 45 comment d (1937). In our case, the payment of collision loss was induced partly by the mistaken belief that probate proceedings with respect to the decedent would not be instituted; this is a mistake of fact and therefore restitution would ordinarily be due.

The parents, however, assert as a defense to this restitutionary claim the fact that their position has changed since the original payment so as to make repayment to the defendant inequitable. The parents have shown that they have already spent all the money paid them for collision loss and death benefits. They cannot exactly account for the money, but they did prove that they spent $8,859.00 on their son's funeral and paid $1,135.00 of his medical bills; and Mrs. King testified that they would not have been able to afford to spend these sums but for the insurance payments because they were destitute at the time of their son's death. In other words, the parents assert as a defense that they have changed their position by spending money that they would not have otherwise spent and that there are no physical assets to which these expenditures can be traced. The question is whether these facts are sufficient to defeat the restitutionary claim of the defendant.

Since change of circumstances is an affirmative defense to a restitutionary claim, the burden is on the parents to show that they would not have incurred any of the expenses paid by the insurance money unless they had received that money. While this is a matter of some difficulty, the court, after hearing the testimony of the parents, is of the view, and finds, that all or substantially all of the money paid by the defendant was spent by the parents in ways that the parents would not have otherwise spent money because they were destitute.

This finding would ordinarily operate as a bar to defendant's third-party complaint for restitution. *See* 3 G. Palmer, *The Law of Restitution* § 16.8(e) at 523–27 (1978). But there is an additional difficulty in this case that must be dealt with. It is admitted by all that the parents spent $8,859.00 on their son's funeral and $1,135.80 on his medical bills, or a total of $9,994.80. Since these amounts were at one time, though not now on account of the running of the statute of nonclaims, recoverable from the estate, it is arguable that the parents' change of position is in large measure due to their own act of not claiming these amounts from the estate. Had they filed a claim with the estate they would now be in a position to pay part of the restitutionary claim or, at the very least, it is right to say that they are not now in a position to prevail on the ground that their position would still have been changed in reliance on the defendant's payments. But Mrs. King testified that she and her husband were given no notice of the opening of the estate, and the court believed the testimony. In such circumstances, the court believes that it would be inequitable to require restitution and will therefore deny defendant's third-party claims against the Kings.

## V.

The court turns, finally, to a consideration of the wage loss benefits provided by the relevant policy. The policy provides that the payments of such benefits would "begin eight days after the date of the [insured's] accident" and would continue for 52 weeks or until his death, whichever occurred first. This language appears unambiguous: It means that wage loss benefits commence eight days after an insured's injury and end on his death. Had the insured lived 10 days, he would then have been entitled to two days' benefits. As he did not survive the requisite eight days, no such benefits are recoverable.

## VI.

For the reasons indicated, a judgment consistent with this opinion will issue.