884 F.2d 381
 Jacquelene A. WOOLSEY, Administratrix of the Estate of
William Allen King, Deceased, Appellee,
v.
NATIONWIDE INSURANCE COMPANY, Appellant.
Jacquelene A. WOOLSEY, Administratrix of the Estate of
William Allen King, Deceased, Appellant,
v.
NATIONWIDE INSURANCE COMPANY, Appellee.
 Nos. 88-2658, 88-2687.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 14, 1989.
Decided Sept. 5, 1989.
 
 Joe Benson, Fayetteville, Ark., for Nationwide Ins. Co.
 Bruce R. Wilson, Clarksville, Ark., for Jacquelene A. Woolsey.
 Before BEAM, Circuit Judge, BRIGHT, Senior Circuit Judge, and HANSON*, Senior District Judge.
 BRIGHT, Senior Circuit Judge.
 
 
 1
 Nationwide Insurance Company (Nationwide) appeals the district court's grant of summary judgment in favor of the estate of William Allen King in the estate's action to recover proceeds under King's automobile insurance policy. For reversal, Nationwide contends that it discharged its obligation under the policy by properly paying collision loss and death benefits to King's parents, who were his heirs and next-of-kin. The estate cross-appeals the district court's ruling that Nationwide properly paid medical benefits directly to health care providers. For the reasons stated below, we hold that the insurer made its payments appropriately. Therefore, we affirm the denial of the estate's claim for medical benefits and reverse the judgment against Nationwide on the claims for death and collision loss benefits.
 
 I. BACKGROUND
 
 2
 On July 9, 1985, William Allen King suffered severe injuries in an automobile accident. He died intestate three days later, survived only by his parents and three brothers. Coy Vaught, a minor who rode as a passenger in the pickup truck King was driving, also suffered severe injuries but survived.
 
 
 3
 At the time of his death at age twenty-one, King resided with his parents, Billy Ray and Anna M. King. An automobile insurance policy issued by appellant Nationwide Insurance Company covered the decedent's pickup truck. This policy provided bodily injury liability coverage ($50,000), medical payments ($5,000), death benefits ($5,000), collision coverage (actual cash value), and wage loss coverage ($140 per week for fifty-two weeks). At the request of King's parents, the insurer paid out benefits under the policy. Specifically, Nationwide paid the full $5,000 in medical benefits to the Sparks Regional Medical Center, $1,135.80 of the death benefits to the Johnson County Regional Hospital, and the remaining $3,864.20 in death benefits to the parents. In addition, after King's parents sent Nationwide copies of an Affidavit of Inheritance and a Bill of Sale in their names for the wrecked vehicle, the insurer paid $9,671.98 in collision loss benefits directly to them. The Kings spent $8,859.00 of this money on their son's funeral and burial expenses.
 
 
 4
 On September 20, 1985, Coy Vaught's father, Sidney Vaught, successfully petitioned the state probate court to appoint Jacquelene Woolsey as administratrix of King's estate.[1] Three months later, Sidney Vaught filed a $600,000 suit against the estate in federal district court on behalf of his minor son. As administratrix, Woolsey then filed four suits against Nationwide in state court, seeking payment of medical, death, collision and wage loss benefits. These four suits eventually were consolidated and removed to federal district court on diversity grounds.[2] Nationwide, in turn, filed a third-party complaint against the Kings, their attorney, and the health care providers, seeking either a declaratory judgment that all prior payments to these parties were proper or, alternatively, restitution from these parties of the payments made.
 
 
 5
 After conducting a bench trial solely on the restitution issues, the district court made revised rulings on cross-motions for summary judgment in the estate's suit against Nationwide. Woolsey v. Nationwide Ins. Co., 697 F.Supp. 1053 (W.D.Ark.1988). Specifically, the district court held that Nationwide: (1) properly paid medical benefits directly to providers of care; (2) improperly paid collision loss and death benefits to King's parents rather than to his estate; and (3) was not obligated to pay wage loss benefits. The district court also denied as inequitable Nationwide's third-party claim for restitution from King's parents. Both Woolsey and Nationwide appeal.
 
 II. DISCUSSION
 
 6
 This appeal presents only the question whether, under Arkansas law and King's automobile insurance policy, Nationwide properly paid various benefits directly to King's parents and health care providers rather than to his estate. We will address each type of policy proceeds in turn.
 
 A. Medical Benefits
 
 7
 Endorsement 1637A to King's automobile insurance policy states that Nationwide will pay medical expenses "to or for" the insured. As the district court noted, the natural construction of this language gives the insurer the right to choose a beneficiary from among a deceased insured's medical creditors and to pay that creditor directly.
 
 
 8
 Arkansas law supports this construction of the policy under the circumstances of this case. Specifically, section 23-89-208 of the Arkansas Code required Nationwide to pay medical expenses within thirty days after receiving copies of various medical bills forwarded by the Kings' attorney on July 26, 1985. Nationwide would have missed this deadline and been assessed a twelve percent late penalty, plus interest and attorney fees, had it delayed payment until Woolsey was appointed as administratrix on October 10, 1985. Thus, the district court did not err in holding that Nationwide properly paid the $5,000 in medical benefits directly to Sparks Regional Medical Center.
 
 B. Death Benefits
 
 9
 King's automobile insurance policy provides that Nationwide will pay $5,000 in death benefits "to or for" the deceased insured. Endorsement 1637A to the policy specifies that if the insured was an unmarried adult, Nationwide will pay amounts due to any person "authorized by law to receive such payment." Under section 23-89-202(3) of the Arkansas Code, the person legally entitled to receive such benefits under a no-fault policy is "the personal representative of the insured." After concluding that the term "personal representative" means the administrator or executor of an estate, the district court held that Nationwide should have paid the death benefits to King's estate rather than to his heirs. Woolsey, 697 F.Supp. at 1055-56.
 
 
 10
 Although the terms "personal representative" and "legal representative" generally mean the executor or administrator of a deceased person, they also may have a wider meaning depending on the intentions of the parties as manifested by the context of the policy or the surrounding circumstances. Long v. Federated Mut. Ins. Co., 431 F.Supp. 473, 474-75 (W.D.Tenn.1976); Schonwald v. Sun Ins. Office, Ltd., 276 F.Supp. 775, 777 (W.D.Okla.1967); 2A J. Appleman & J. Appleman, Insurance Law and Practice Sec. 1071, at 117-18 (1966); Black's Law Dictionary 1170 (5th ed. 1979); Annotation, What Constitutes "Legal Representative" or "Personal Representative" Entitled to Receive Insurance Proceeds on Account of Loss Suffered by Deceased, 40 A.L.R.4th 255, 257 (1985). In this case, Nationwide maintains that because the term "personal representative" also could include heirs and next-of-kin, Nationwide properly paid death benefits directly to King's parents. Based on our review of the purposes and statutory context of the death benefits requirement, we agree.
 
 
 11
 Arkansas law mandates that all automobile liability policies provide for $5,000 in accidental death benefits. Ark.Code Ann. Sec. 23-89-202(3) (Michie Supp.1987). The Arkansas Supreme Court has stated that these death benefits "are like life insurance." O'Bar v. MFA Mut. Ins. Co., 275 Ark. 247, 628 S.W.2d 561, 562 (1982). Thus, like life insurance proceeds, death benefits should pass directly to the beneficiaries and should not enter the decedent's estate to become subject to claims by the decedent's creditors. See Ark.Code Ann. Sec. 23-79-131(a)(1) (Michie 1987). When a life insurance policy does not specifically name a beneficiary, the insurer generally should pay the proceeds to the insured's heirs or next-of-kin. J. Appleman, supra, Sec. 1097, at 192-93. Applying the same rule to death benefits, we conclude that the benefits under King's policy logically were payable to his parents as heirs or next-of-kin.
 
 
 12
 Other statutory provisions also indicate that the Arkansas legislature intended an expansive definition for the term "personal representative" in section 23-89-202(3) of the Code. For example, section 28-41-101 provides for the distribution of small estates without appointment of an administrator or executor. As a result, if an insurer must pay death benefits to an executor or administrator, heirs of insured persons who die in automobile accidents apparently could not use the scheme for expedited distribution of small estates.
 
 
 13
 Woolsey counters that such distributees still may implement the distribution scheme for small estates so long as they do not accept direct payments from an insurer before complying with the statutory requirements, which include waiting at least forty-five days after the death of the decedent. Ark.Code Ann. Sec. 28-41-101(a)(2) (Michie Supp.1987). This interpretation, however, conflicts with section 23-89-208 of the Code, which requires insurers to pay death benefits under no-fault policies within thirty days after receipt of proof of a claim. To meet the latter deadline and avoid penalties for late payment, insurers might have to arrange for appointment of an administrator themselves, even for small estates. Thus, interpreting "personal representative" to mean only administrators and executors would frustrate the legislature's apparent intent to require payment of benefits under an automobile insurance policy without the necessity of appointing an administrator for an estate.
 
 C. Collision Loss Benefits
 
 14
 King's automobile insurance policy provides that Nationwide either will pay the insured directly for a collision loss or will repair or replace the damaged vehicle. When King died three days after the accident, his right to the collision loss proceeds passed to his estate along with all of his other property rights. See Dean v. Brown, 216 Ark. 761, 227 S.W.2d 623, 628 (1950). Therefore, we agree with the district court that Nationwide should have paid those proceeds either to King's estate or, alternatively, to his heirs after compliance with section 28-41-101 of the Code. We note, however, that the proceeds would have remained subject to the rights of the lienholder on the vehicle.[3]
 
 
 15
 Although originally entitled to the collision loss proceeds, the estate is now barred on equitable grounds from maintaining this claim against Nationwide. Arkansas law would have required the estate to use the collision loss proceeds to pay funeral and medical expenses before satisfying the claims of other creditors. Ark.Code Ann. Sec. 28-50-106 (Michie 1987). As we have previously observed, the record establishes that the parents paid $8,859.00 for funeral and burial expenses,[4] and paid $1,135.80 out of their death benefits for medical expenses. Thus, these payments satisfied obligations of the estate in an amount greater than the $9,671.88 in collision proceeds that the parents received. Consequently, any recovery of collision proceeds by the estate would constitute an unwarranted award of duplicative benefits against the insurer.
 
 III. CONCLUSION
 
 16
 We affirm the denial of the estate's claim for medical benefits under the policy, but reverse the judgment awarding the estate death and collision loss benefits. We remand for entry of an appropriate judgment consistent with this opinion.
 
 
 
 *
 The Honorable WILLIAM C. HANSON, Senior United States District Judge for the Southern District of Iowa, sitting by designation
 
 
 [1]
 Woolsey works as a secretary for the attorney representing the estate in this litigation
 
 
 [2]
 As part of an earlier settlement agreement, both Vaught and the King estate released Nationwide from liability stemming from Vaught's suit against the estate. Under this settlement, Vaught obtained a judgment against the estate for $75,000 plus court costs of $600, and Nationwide paid Vaught the $50,000 limit of the policy's liability coverage plus court costs. Vaught reserved the right to recover the balance of the judgment against the estate
 On appeal, Nationwide claims that the releases executed in its favor by Vaught and the King estate now bar the estate from pursuing its claims against the insurer. We disagree. In its release, the estate expressly reserved the right to maintain this action against Nationwide. In addition, the release executed by Vaught in favor of Nationwide does not bind the estate, a non-party to that agreement.
 
 
 [3]
 According to the policy declarations for King's automobile policy, the Chrysler Corporation possesses a lien on the vehicle. The lienholder is not a party to this action, however, and neither the estate nor Nationwide presented evidence of the lien. For the purposes of this action against Nationwide, we need only point out that in the Affidavit of Inheritance and the Bill of Sale forwarded to Nationwide along with the request for payment of proceeds, King's parents represented that they took the vehicle free of any encumbrances
 
 
 [4]
 Burial expenses apparently are included in the "reasonable funeral expenses" which receive priority in the distribution of an estate under section 28-50-106. See Dutton v. Brashears Funeral Home, 235 Ark. 120, 357 S.W.2d 265, 268 (1962) (recognizing legal obligation of decedent's estate to pay expenses of "decent burial")